IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEMOCRACY FORWARD FOUNDATION<br>1333 H St. NW<br>Washington, DC  20005,<br><br>   *Plaintiff*,<br><br>   v.<br><br>U.S. DEPARTMENT OF JUSTICE<br>950 Pennsylvania Ave. NW<br>Washington, DC  20530,<br><br>   *Defendant.* | Case No. 18-cv-376 |

# COMPLAINT

1.    Plaintiff Democracy Forward Foundation brings this action against Defendant the United States Department of Justice (the "DOJ") to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 (the "FOIA").  Defendant has failed to sufficiently respond to Plaintiff's request for communications and records related to, among other things: DOJ's decision to rescind an August 18, 2016 memorandum authored by then Deputy Attorney General Sally Yates—the "Yates Memo"[1]—that directed the Bureau of Prisons to reduce the role of private prisons in the federal prison system; contracts for private prison services that were established, renewed, or terminated following rescission of the Yates Memo; and any DOJ assessments of the federal correctional system's future needs for private prison services.

2.    The records Plaintiff has requested are of significant public importance.  In rescinding the Yates Memo, through a February 21, 2017 memorandum from Attorney General

---

[1] Deputy Att'y Gen. Sally Yates, U.S. Dep't of Justice, *Reducing Our Use of Private Prisons* (Aug. 18, 2016), https://www.justice.gov/archives/opa/file/886311/download.

Jefferson B. Sessions III sent to the Acting Director of the Federal Bureau of Prisons (the "BOP" or the "Bureau")—the "Sessions Memo"—Defendant claimed that restrictions on using private prisons "impaired the Bureau's ability to meet the future needs of the federal correctional system" and "direct[ed] the Bureau to return to its previous approach."[2] The Sessions Memo provided no substantive explanation or support for the claim that private prisons were required for the federal correctional system to operate, nor did it address safety and security concerns with regard to private prison facilitates that the Yates Memo identified.

3. Nonetheless, BOP is proceeding apace. A January 24, 2018 memorandum for BOP Chief Executive Officers from Frank Lara, the Assistant Director of the Bureau's Correctional Programs Division, requires the identification of inmates for potential transfer to private prison facilities.[3]

4. Defendant's abrupt pivot toward private prisons is occurring as the private prison industry is providing substantial support for President Donald J. Trump's political and personal endeavors. The industry helped finance President Trump's campaign and inaugural festivities, and it continues to patronize his business enterprises.

5. Plaintiff submitted a FOIA request to the DOJ in order to examine, and educate the public about, significant questions concerning the motivations behind the Session Memo's issuance. The DOJ (including its various subcomponents) has failed to sufficiently respond to

---

[2] Att'y Gen. Jefferson B. Sessions III, U.S. Dep't of Justice, *Rescission of Memorandum on Use of Private Prisons* (Feb. 21, 2017), https://www.bop.gov/resources/news/pdfs/20170224_doj_memo.pdf.

[3] Frank Lara, U.S. Dep't of Justice, Fed. Bureau of Prisons, *Increasing Population Levels in Private Contract Facilities* (Jan. 24, 2018) (the "Lara Memo"), https://admin.govexec.com/media/gbc/docs/pdfs_edit/012518privateprisons.pdf.

Plaintiff's request. Plaintiff therefore respectfully requests that the Court compel Defendant to comply with the FOIA.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

7. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1).

## PARTIES

8. Plaintiff Democracy Forward Foundation is a not-for-profit organization incorporated under the laws of the District of Columbia and based in Washington, D.C. Plaintiff works to promote transparency and accountability in government, in part by educating the public on government actions and policies.

9. Defendant the DOJ is a federal agency within the meaning of the FOIA, *see* 5 U.S.C. § 552(f)(1), that is headquartered in Washington, D.C. Defendant has possession, custody, and control of records to which Plaintiff seeks access.

## STATEMENT OF FACTS

<u>The Yates Memo</u>

10. On August 18, 2016, then-Deputy Attorney General Sally Yates issued a memorandum for the acting director of BOP. *See* Yates Memo. The Yates Memo carefully described the almost 800 percent increase in the federal prison population between 1980 and 2013, and the way in which this massive increase paved the way for BOP to begin using privately operated prisons to house federal inmates. *Id.* at 1. After reaching its historical apex in 2013, however, the federal inmate population began to decline substantially, thereby reducing the need to use private prisons to house federal inmates. *Id.*

11. Moreover, as the Yates Memo noted, even when private prisons *were* deemed necessary to house an expanding inmate population, they failed to adequately protect inmate health and safety and did not significantly reduce costs:

> Private prisons served an important role during a difficult period, but time has shown that they compare poorly to our own Bureau facilities. They simply do not provide the same level of correctional services, programs, and resources; they do not save substantially on costs; and as noted in a recent report by the Department's Office of Inspector General, they do not maintain the same level of safety and security. The rehabilitative services that the Bureau provides, such as educational programs and job training, have proved difficult to replicate and outsource—and these services are essential to reducing recidivism and improving public safety.

*Id.*

12. In light of these facts, the Yates Memo announced an intention "to enlist [BOP's] help in beginning the process of reducing—and ultimately ending—our use of privately operated prisons." *Id.* at 2. To accomplish this goal, the Yates Memo directed that "as each contract reaches the end of its term, the Bureau should either decline to renew that contract or substantially reduce its scope." *Id.*

13. After the Yates Memo directed BOP to reduce its reliance on private prisons, private prison corporations experienced declining stock prices.[4]

The Sessions Memo

14. On February 21, 2017, Attorney General Sessions, in a memorandum containing only a single paragraph, announced that the Yates Memo was rescinded, and directed BOP "to return to its previous approach." Sessions Memo at 1.

---

[4] Evelyn Cheng, *Prison Stocks Plunge After Report Justice Department Will End Use of Private Prisons*, CNBC (Aug. 18, 2016), https://www.cnbc.com/2016/08/18/prison-stocks-plunge-after-report-justice-department-will-end-use-of-private-prisons.html.

15. The Sessions Memo asserted that the Yates Memo had "changed long-standing policy and practice, and impaired the Bureau's ability to meet the future needs of the federal correctional system." *Id.*

President Trump's Support From and For Private Prison Corporations

16. Private prison corporations have financially supported President Trump's political and private interests in a number of ways.

17. A subsidiary of the GEO Group, one of the largest private prison corporations, contributed more than $200,000 to a political action committee that supported President Trump's candidacy.[5]

18. The GEO Group donated another $250,000 to help finance President Trump's inaugural festivities.[6]

19. In May 2017, a few months after the Yates Memo was rescinded, the GEO Group announced that it had been awarded two contracts by BOP that are "expected to generate total combined revenues of approximately $664 million over their full ten-year terms."[7]

---

[5] Amy Brittain & Drew Harwell, *Private-prison Giant, Resurgent in Trump Era, Gathers at President's Resort*, Wash. Post (Oct. 25, 2017), https://www.washingtonpost.com/politics/with-business-booming-under-trump-private-prison-giant-gathers-at-presidents-resort/2017/10/25/b281d32c-adee-11e7-a908-a3470754bbb9_story.html?tid=ss_tw&utm_term=.903c97f21c42; *see also* Campaign Legal Center, Letter: Trump Super PAC Received Illegal Donations from Private Prison Company (Dec. 20, 2016), http://www.campaignlegalcenter.org/document/letter-trump-super-pac-received-illegal-donations-private-prison-company (describing in a letter to the Federal Election Commission a $225,000 contribution made by GEO Corrections Holdings, Inc., to Rebuilding America Now, a Super PAC that supported President Trump's candidacy).

[6] *See, e.g.*, Brittain & Harwell, *supra* note 5; Fredreka Schouten, *Private Prisons Back Trump and Could See Big Payoffs with New Policies*, USA Today (Feb. 23, 2017), https://www.usatoday.com/story/news/politics/2017/02/23/private-prisons-back-trump-and-could-see-big-payoffs-new-policies/98300394/.

5

20.     More recently, the GEO Group moved its annual conference to the Trump National Doral Golf Club.[8] The GEO Group's decision has been described as "an apparent ongoing effort to align more closely with President Trump."[9]

### The Need for the Requested Records

21.     DOJ's decision to rescind the Yates Memo has sparked significant public interest.[10] But neither the Sessions Memo nor any other publicly available government documents adequately explain DOJ's basis for asserting that the Yates Memo "impaired the Bureau's ability to meet the future needs of the federal correctional system," which was the sole justification offered for rescinding the Yates Memo. Sessions Memo at 1.

22.     Moreover, in light of the of the financial support provided by private prison corporations to President Trump, as well as the GEO Group's recent decision to patronize one of President Trump's resort properties, there is additional interest in better understanding whether Defendant's decision to rescind the Yates Memo was influenced or encouraged by private prison corporations.

---

[7] Press Release, GEO Grp., Inc., *The GEO Group Awarded 10-Year Contracts by the Federal Bureau of Prisons for 3,532 Existing Beds in Big Spring, Texas* (May 26, 2017), http://investors.geogroup.com/file/Index?KeyFile=2000767504.

[8] *See* Brittain & Harwell, *supra* note 5; *see also* Avery Anapol, *Private Prison Company Moves Annual Conference to Trump Golf Course*, The Hill (Oct. 26, 2017), http://thehill.com/homenews/administration/357282-private-prison-company-moves-annual-conference-to-trump-golf-course.

[9] Anapol, *supra* note 8.

[10] *See, e.g.*, Matt Zapotosky, *Justice Department Will Again Use Private Prisons*, Wash. Post (Feb. 23, 2017), https://www.washingtonpost.com/world/national-security/justice-department-will-again-use-private-prisons/2017/02/23/da395d02-fa0e-11e6-be05-1a3817ac21a5_story.html?utm_term=.99ee9f44a609; Eric Lichtblau, *Justice Department Keeps For-Profit Prisons, Scrapping an Obama Plan*, N.Y. Times (Feb. 23, 2017), https://www.nytimes.com/2017/02/23/us/politics/justice-department-private-prisons.html.

23. The timely need for this information is particularly apparent in light of the White House's recent focus on prison reform.[11] Since at least March 2017, President Trump's son-in-law and adviser, Jared Kushner, has been leading White House efforts to develop a policy proposal for reforms to the criminal justice system, including prison reform.[12] As part of this ongoing effort, the White House hosted a roundtable "listening session" on prison reform on January 11, 2018.[13] The use of, and future plans for, private prisons were not discussed at the January 11 event.

24. Finally, recently, BOP initiated a process to transfer additional federal inmates to private prison facilities. *See* Lara Memo.

25. No national discussion of prison reform can be complete without an understanding of DOJ's expectations for future incarceration needs, and the role that private prison corporations will play moving forward.

Plaintiff's FOIA Request

26. In order to understand and explain to the public the reasoning behind DOJ's decision to rescind the Yates Memo, the extent to which private prison corporations were involved in discussions about the rescission of the Yates Memo, and the ways in which the

---

[11] Gregory Korte, *Trump Tackles Prison Reform: 'We Can Help Break This Vicious Cycle'*, USA Today (Jan. 11, 2018), https://www.usatoday.com/story/news/politics/2018/01/11/trump-prison-reform-roundtable-jared-kushner-initiative/1023747001/; Dan Merica, et al., *Trump Hosts Prison Reform Listening Session*, CNN Politics (Jan. 11, 2018), http://www.cnn.com/2018/01/11/politics/donald-trump-jared-kushner-prison-reform/index.html.

[12] *See, e.g.*, Beth Reinhard, *Kushner to Gather Bipartisan Group to Come Up with Ideas for Federal Prisons,* Wash. Post (Sept. 13, 2017), https://www.washingtonpost.com/investigations/kushner-to-gather-bipartisan-group-to-come-up-with-ideas-for-federal-prisons/2017/09/13/a65ca446-97e6-11e7-b569-3360011663b4_story.html.

[13] White House, *Remarks by President Trump in a Meeting on Prison Reform* (Jan. 11, 2018), https://www.whitehouse.gov/briefings-statements/remarks-president-trump-meeting-prison-reform/.

existing relationship between private prison corporations and the Trump Administration might affect federal prison policy and the ongoing White House discussions of prison reform, Plaintiff submitted the following requests for records to DOJ on May 19, 2017:

1. Any and all records that refer or relate to the termination or renewal (including changes to scope) of existing contracts related to the building, construction, operation, and/or maintenance of private prisons, detention centers, and/or facilities.

2. Any and all records that refer or relate to the consideration of new contracts related to the building, construction, operation, and/or maintenance of private prisons, detention centers, and/or facilities.

3. Any and all records that refer or relate to the decision by Attorney General Jeff Sessions to rescind an August 18, 2016 Department of Justice Memorandum (herein "2016 Yates Memo") regarding the reduced use of private prisons in the federal prison system.

4. Any and all records assessing, or relating to the assessment of, the "future needs of the federal correctional system" as specified in the Attorney General's memorandum of February 21, 2017.

5. Any and all records assessing whether the 2016 Yates Memo "impaired the Bureau's ability to meet the future needs of the federal correctional system" as specified in the Attorney General's memorandum of February 21, 2017 and [a]ny and all records relating to any such assessment.

6. Any and all records considered by the Attorney General, the Office of the Attorney General, or any other component of the Department of Justice, in determining that the 2016 Yates Memo "impaired the Bureau's ability to meet the future needs of the federal correctional system" as specified in the Attorney General's memorandum of February 21, 2017.

7. Any and all records that: (i) Contain any the following words: "CoreCivic," "Core Civic," "Corrections Corporation of America," "CCA," "The Geo Group," "Geo Group," "GEO Corrections Holdings Inc.," "Natchez," "David Donahue," "George Zoley," "Pablo Paez," or "David Venturella"; and (ii) were sent or received by any of the following Department of Justice employees: Attorney General Jefferson Sessions, Deputy Attorney General Rod Rosenstein, Alan Hanson, Gary Barnett, Jonathan Berry, Noel Francisco, Curtis Gannon, Lauren Goldschmidt, John Gore, Mary Blanche Hankey, Trevor McFadden, Counsel Chad Mizelle, Michael Murray, Ryan Newman, Rachael Parker, Chad Readler, David Rybicki, Matthew Sheehan, Scott Stewart, Brett Talley, Rachael Tucker, Tom Wheeler, or Jeff Wood.

8. Any and all records that: (i) Refer or relate to Department of Justice use of private prisons; and (ii) were sent or received by any of the following Department of Justice employees: Attorney General Jefferson Sessions, Deputy Attorney General Rod Rosenstein, Alan Hanson, Gary Barnett, Jonathan Berry, Noel Francisco, Curtis Gannon, Lauren Goldschmidt, John Gore, Mary Blanche Hankey, Trevor McFadden, Counsel Chad Mizelle, Michael Murray, Ryan Newman, Rachael Parker, Chad Readler, David Rybicki, Matthew Sheehan, Scott Stewart, Brett Talley, Rachael Tucker, Tom Wheeler, or Jeff Wood.

Ex. A at 1-3 (footnotes omitted).

27. The record requests were limited to records created in the period from January 20, 2017 to the date DOJ conducted a search for responsive records. *Id.* at 3.

28. Plaintiff specifically requested that, for requests nos. 1, 2, and 3, DOJ search for responsive records within the Office of the Attorney General, the Office of the Deputy Attorney General, the Office of Legal Policy, the Office of Legislative Affairs, the Office of Public Affairs, the Justice Management Division, and the Bureau of Prisons.[14]

29. Plaintiff sought a waiver of search and duplicating fees under 5 U.S.C. § 552(a)(4)(A)(iii), which requires a fee waiver if the disclosure is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."

Plaintiff's Correspondence with DOJ FOIA Offices

30. Plaintiff's request was sent initially to the DOJ Mail Referral Unit, which, in a letter dated May 22, 2017, acknowledged receipt and notified Plaintiff that the request had been forwarded to the Office of Information Policy ("OIP") and BOP.

---

[14] Subsequently, Plaintiff agreed to withdraw request no. 8 with respect to BOP only. *See infra* ¶ 37.

31. On June 20, 2017, OIP informed Plaintiff that it had received the request, that it had not yet made a determination as to waiving search fees, and that it was assigning Plaintiff's request to a complex track, for which OIP asserted additional time was needed.

32. OIP, in turn, referred Plaintiff's request to the Office of Legal Counsel ("OLC"), which acknowledged, in a letter dated July 20, 2017, that it had received Plaintiff's request on June 20, 2017.  In that same correspondence, OLC stated that it was assigning Plaintiff's request to a complex processing track, that more time was needed to review the request, and that no decision had yet been made on Plaintiff's request for a fee waiver.

33. The request was also sent to the Office of Justice Policy ("OJP"), which, in an email dated June 29, 2017, acknowledged receipt of the request and asserted that additional time was required due to unusual circumstances.

34. By letter dated July 27, 2017, OJP asserted that it had completed a search within OJP and "no responsive records were located subject to the Freedom of Information Act." Plaintiff did not administratively appeal OJP's decision.

35. BOP acknowledged receipt of Plaintiff's FOIA request by letter dated June 22, 2017, noted that the request had been referred to BOP's Central Office for processing, and claimed that additional time for processing would be required due to unusual circumstances.

36. Following BOP's June acknowledgement, Plaintiff and BOP corresponded intermittently by telephone and email.

37. To expedite processing of the request, in an email dated August 23, 2017, Plaintiff agreed that, with respect to BOP only, request no. 8 would be withdrawn.  In that same email, Plaintiff offered recommendations for how request no. 7 could be narrowed and simplified to aid BOP in its search for responsive records.

38.     On or around October 17, 2017, Plaintiff and BOP reached an agreement as to how BOP would conduct a search for records responsive to request no. 7.

39.     On October 30, 2017, BOP indicated by email that the request for records had been sent to "the appropriate components for a records search," and that BOP "anticipate[d] receiving a response by the week of November 20," which would allow BOP to provide an estimate on the total processing time for Plaintiff's request.  BOP further agreed that it would produce documents as they became available for production, *i.e.*, on a rolling basis.

40.     Plaintiff inquired as to the status of the request on December 12, 2017, and again sought an estimate from BOP as to when a search for responsive records could be completed.

41.     On January 5, 2018, BOP delivered by email its first and, to date, only production of records.  The production contained 17 pages of records, 4 pages of which contained redactions.

42.     As BOP conceded in the cover letter that accompanied the production, these records were responsive only to requests nos. 1 and 2.  It does not appear from BOP's correspondence that searches have been initiated for the other agreed-upon portions of Plaintiff's request for records.

43.     BOP has not supplemented this initial production, nor has it provided an estimate of when its search for responsive records held by BOP custodians will be complete.

44.     As of the date of this Complaint, Defendant DOJ, and numerous DOJ components, have failed to notify Plaintiff whether DOJ will comply with Plaintiff's FOIA request, *see* 5 U.S.C. § 552(a)(6)(A)(i), or produce all requested records or demonstrate that they are lawfully exempt from production, *see id.* § 552(a)(6)(C).  Nor have numerous components of DOJ notified Plaintiff of the scope of any responsive records DOJ intends to produce or withhold

and the reasons for any withholdings, or informed Plaintiff that it may appeal any adequately specific, adverse determination.

45.     Because DOJ has "fail[ed] to comply with the applicable time limit provisions" of the FOIA, even with the benefit of any extensions of time that DOJ might have claimed, Plaintiff is "deemed to have exhausted [its] administrative remedies." *See id.* § 552(a)(6)(C)(i).

## CLAIM FOR RELIEF

### Count One (Violation of the FOIA, 5 U.S.C. § 552)

46.     Plaintiff repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

47.     By failing to respond to Plaintiff's request within the statutorily prescribed time limit, Defendant has violated its duties under the FOIA, including but not limited to its duties to conduct a reasonable search for responsive records, and to produce all responsive, reasonably segregable, non-exempt information.

48.     Plaintiff is being irreparably harmed by Defendant's violation of the FOIA, and Plaintiff will continue to be irreparably harmed unless Defendant is compelled to comply with the FOIA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1.     order Defendant to conduct searches for any and all records responsive to Plaintiff's FOIA request and demonstrate that it employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiff's FOIA request;

2.     order Defendant to produce, by a date certain, any and all nonexempt records responsive to Plaintiff's FOIA request and a *Vaughn* index of any responsive records withheld under claim of exemption;

3. enjoin Defendant from continuing to withhold any and all non-exempt records responsive to Plaintiff's FOIA request;

4. order Defendant to grant Plaintiff's request for a fee waiver;

5. grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

6. grant Plaintiff such other relief as the Court deems just and proper.

| | |
|---|---|
| Dated: February 20, 2018 | Respectfully submitted,<br><br>/s/ *Skye L. Perryman*<br>Skye L. Perryman (D.C. Bar No. 984573)<br>Adam Grogg (N.Y. Bar)*<br>Democracy Forward Foundation<br>1333 H St. NW<br>Washington, DC  20005<br>(202) 448-9090<br>sperryman@democracyforward.org<br>agrogg@democracyforward.org<br><br>*Admitted in New York; practicing under the supervision of members of the D.C. Bar while D.C. Bar application is pending.<br><br>*Counsel for Plaintiff* |